UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIETTE KHAMJANI,

    Plaintiff,

v.                                                  CASE NO. 8:20-cv-2153-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on August 13, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from February 8, 2017, the alleged disability onset date, through September 3, 2019, the date of the ALJ's decision.[2] (Tr. 11-20, 396-

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 22.)

[2] Plaintiff had to establish disability on or before December 31, 2021, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 11.) The earliest time that SSI benefits are payable is the month following the month in which the application was filed. (*See* 20 C.F.R. § 416.335.)

441.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must consider both evidence that is favorable and evidence that is unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

### A.     The Parties' Arguments

Plaintiff argues that the Appeals Council erred in its consideration of the new evidence submitted shortly after the ALJ's decision.  (Doc. 24.)  This evidence consisted of: (1) an MRI of the lumbar spine from October 8, 2019 (Tr. 447-48); (2) Dr. Thomas Freeman's progress note from October 16, 2019 (Tr. 443-45); and (3) records of Plaintiff's lumbar surgery that took place on November 5, 2019 (Tr. 173-78).  (Doc. 24 at 7.)  According to Plaintiff, the Appeals Council erroneously found that the new evidence did not relate to the period at issue, was not material, and would not have changed the administrative result.  (*Id.* at 2, 7.)  Plaintiff states that the new evidence was for the same condition and was generated only a few weeks after the ALJ's decision.  (*Id.* at 7.)

Plaintiff argues that if the ALJ had known that Plaintiff's lumbar impairment was as severe as shown on the October 8, 2019 lumbar MRI, or that Plaintiff's pain was as severe as alleged, the ALJ would not have found her capable of performing her past relevant work or other light-duty work.  (*Id.*)  Plaintiff points out that the ALJ discounted her subjective complaints, in part, because she had cancelled her back surgery in 2018, but as the hearing testimony demonstrates, Plaintiff was awaiting her back surgery, which was performed approximately two months after the ALJ's decision.

3

(*Id.* at 8.) Plaintiff also points out that the ALJ relied on outdated opinion evidence from 2017. (*Id.*)

Defendant responds that the Appeals Council properly denied Plaintiff's request for review of the ALJ's decision. (Doc. 25 at 4.) Defendant states that the evidence submitted to the Appeals Council included the following: (1) Dr. Freeman's records from July 8, 2019 through October 16, 2019; and (2) Tampa General Hospital records from October 28, 2019 through November 8, 2019. (*Id.* at 5.) Defendant explains that the Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually. (*Id.* at 7.)

Defendant argues that the Appeals Council properly concluded that there was no reasonable probability that Dr. Freeman's records would change the outcome of the decision. (*Id.* at 5.) Defendant states that "Dr. Freeman notes the same medical conditions that the ALJ already reviewed and determined were severe, resulting in an RFC for light work." (*Id.* at 7; *but see id.* (stating, in the same paragraph, that "Dr. Freeman's opinion is inconsistent with the other evidence of record").)

With regard to the evidence dated after the ALJ's decision, Defendant contends that the ALJ properly concluded this evidence did not relate to the period at issue. (*Id.* at 5, 7.) To the extent these records show worsening of Plaintiff's condition after the ALJ's decision, Defendant argues, the Appeals

4

Council reasonably found these records not chronologically relevant to the ALJ's decision. (*Id.* at 8.) According to Defendant, Plaintiff has failed to explain how these records show limitations beyond the ALJ's RFC finding during the relevant period. (*Id.*)

### B. Relevant Evidence and Administrative Findings

#### 1. The Hearing Testimony

Plaintiff appeared at the August 13, 2019 hearing before the ALJ. (Tr. 396.) She testified about her limitations, in relevant part, as follows:

> A   . . . I can only stand for an hour, only walk[,] if I have to[,] for 20 minutes at the most, and sitting is, like, I take a break after half an hour, and then I lie down and then I sit again, because my back it's very, very difficult for me to sit, in a 90 degree position, and my back hurts me really, really bad, because my surgeon wants me to do the surgery, I postponed it, but I agreed to do the back surgery. I see him on October 16th, and he says if I don't get this back surgery then, I'll, it's going to be worse, and he mentioned paralyzed, and he said it's unstable.
>
> . . .
>
> Q   . . . Dr. Freeman . . . wanted you to have surgery actually quite some time ago?
> A   Yes and then I got scared and I cancelled it, but now I see him again on [the] 16th of October, he wants to do the back surgery, I go for the MRI [on] September 25th.
> Q   Right. He's insisted all along that you needed it.
> A   Yeah, he says because.
> Q   But you, but you were scared to have it?
> A   Yeah because it's a very invasive surgery, there's fusion, --
> Q   Right.
> A   -- you know, --
> Q   Right.
> A   -- screws and rods, it's a 6-month recovery.

5

Q     So, but you, you finally decided you're going to have it?
A     Yeah, I'm going to have it, because[] I can't -- there's so much I can't do.
Q     Okay. Has your condition changed since, since you left Houston and . . . came to Florida?
A     It's gotten worse.
. . .
Q     How, how, how much worse has it gotten?
A     I'd say about 40% worse.
. . .
A     Almost 50% worse.
. . .

Q     Out, out of a typical day, how much time do you spend lying down?
A     Several hours.
. . .
Q     Okay, and that's mainly because of your back?
A     My back and neck and my knee too.
. . .

A     . . . I have to wear a knee brace . . . all the time, even when I'm at home . . . . I can't squat, I can't sit 90 degrees, I can't stand because of my knee, you know, I can't really sit even, like, comfortably [be]cause of my knee, and you know, I mean even if I, my back gets corrected, if it does, ever does, I still can't stand because of my knee, my knee is too far gone --
Q     Yes.
A     I need a knee replacement.
. . .

A     I had a knee surgery on my knee, that's why I was reluctant, because at this point[,] I don't know if it's going to help because it's got so much arthritis in it.
Q     When did you have the, the knee surgery?
A     2011, I had the knee surgery.
Q     Okay, and[] so did you get any relief from it at that time?
A     Not much.
. . .

A     March 29th I had the bunion surgery.

> Q   Okay, and how are you recovering from that?
> A   It's been, it's been a slow process, it's been four and a half months, I'm in therapy for it now . . . , but[] it's very difficult for me to walk or, or stand too much on my foot, even to put pressure on it . . . .
> . . .
> Q   And, and so taking all those things together, you, you, do you feel your conditions gotten worse since 2017?
> A   Yes, I feel it's gotten worse.
> . . .
>
> A   . . . I have this upcoming back surgery . . . , it's very high-risk surgery for me to do, and that's why I cancelled the first time, because there's a very high risk. It's not easy surgery, so I just wish I had no injuries . . . .

(Tr. 417-20, 422-25, 427, 433-34.)

### 2.   The ALJ's Decision

The ALJ issued her decision on September 3, 2019. (Tr. 20.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 13.) At step two, she found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, osteoarthritis, obesity, right foot Hallux valgus with other enthesopathy, and winged scapula. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15.)

Then, prior to step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work as follows:

7

> [The claimant has] the ability to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and sit 6 hours, stand 6 hours, and walk 6 hours in an 8-hour workday. Her ability to push and/or pull [is] limited to the same weights as she can lift and/or carry. However, she is only able to occasionally reach overhead bilaterally as well as occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. The claimant can frequently work at unprotected heights, around moving mechanical parts, or in vibration. Finally, she is limited to only frequent extension, rotation, and flexion of her neck.

(Tr. 15-16.)

The ALJ summarized some of the pertinent hearing testimony as follows:

> During the hearing, the claimant testified that until February 2017, she worked as a ticket seller but can no longer perform the job due to its sitting requirements. . . .
>
> In terms of her limitations, she indicated that she cannot even sit for 30 minutes at one time before having to lay down due to neck and back pain/pressure. She testified that she gets neck spasms and cannot utilize her left arm and is restricted to lifting no more than 7 to 10 pounds. Because of this, she testified that she has overused her right arm with resulting shoulder pain. Moreover, she indicated that she has arthritis in her hand/thumb, requiring multiple injections. She also testified that she has low back pain, limiting her, as noted above, to sitting for 30 minutes before needing to lay down for 30 minutes to take pressure off her back. She also indicated that she is limited to standing for 1 hour and walking 20 minutes; and that because of the severity of her back impairment, her physician wants to perform surgery.
>
> Finally, the claimant alleged on-going pain in multiple joints. For example, she indicated that because of right knee pain, she has to wear a brace due to pain and instability. In fact, she indicated that even if surgery corrects her back, she could not stand for long periods because of knee pain.

(Tr. 16.)

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17.) The ALJ explained:

> First, the objective findings on examination generally note normal gait, station, and strength, which appears in direct conflict with the claimant's testimony that her impairments severely restrict her ability to lift, carry, stand, walk, and sit. Moreover, although imaging has revealed cervical and lumbar spinal impairments, despite her allegations of neck/lower back pain, her cervical spine MRI revealed no spinal or foraminal narrowing and her lumbar MRI, although noting L5-S1 spondylolisthesis that may eventually require surgery, notes no more than minimal degeneration at any other level. Furthermore, despite her testimony regarding the severity of her knee pain, which would prevent standing even after her back impairment was correct, 2019 examinations have noted full range of motion, intact sensation, and no weakness (*see[,] e.g.*[,] Ex. C24F/3). Similarly, although the claimant alleges significant hand/manipulative limitations, this is generally not noted on examination (*see[,] e.g.*[,] Ex. C11F). . . .

(*Id.*)

The ALJ then turned to the medical evidence, but found that despite "a long history of spinal and multi-joint impairment . . . , neither diagnostic imaging nor objective findings on examination demonstrate that these impairments are nearly as severe as currently alleged." (*Id.*) With respect to

9

Plaintiff's treatment, the ALJ noted:

> [W]hile the physical therapy did help, the claimant continued to report pain. Her insurance would not cover injection treatment, and her neurologist scheduled her for an L5-S1 laminectomy with fusion and internal fixation and open reduction (Exs. C18F, 19F). However, in September 2018, the claimant canceled this surgery, reporting that she no longer experiences radiating leg pain and is able to stand for 1 hour and walk 45 minutes at one time, noting that her right knee was actually her primary impediment to physical activity (Ex. C27F). Although, of note, July 2019 records note that the claimant again wants surgery, reporting a reduction in her ability to walk, stand, and sit (Ex. C31F).
>
> Finally, in late 2018 into early 2019, orthopedic records list significant right knee pain, diagnosed as degenerative disc disease, with resulting injection. However, examinations note full range of motion of the knee, although some examinations do note knee weakness (Exs. C22F, 24F). During this period, due to Hallux valgus, the claimant also underwent a modified McBride bunionectomy . . . .

(Tr. 17-18.)

The ALJ then addressed the opinion evidence, giving great weight to the July 2017 opinions of State agency non-examining consultant, Shakra Junejo, M.D. (Tr. 18.) The ALJ explained:

> [Dr. Junejo] supports his function-by-function restrictions with specific evidence of record. Moreover, his conclusion is consistent wit the bulk of the evidence of record, which, as noted above, shows that while the claimant does experience several impairments, none are debilitating. While surgery has been offered for her back, the claimant has to this point, not undergone the procedure, opting for more conservative treatment. Even without this surgical intervention, examinations generally show normal gait and station. Furthermore, while impairment is noted in several joints on diagnostic imaging, the bulk of these are deemed mild or minimal.

10

(*Id.*)  In summary, the ALJ stated "although the claimant has on-going physical impairment, which may require lumbar surgery, the overall evidence of record notes the ability to perform the severely reduced range of light work defined above."  (*Id.*)

Then, at step four, based on the testimony of the Vocational Expert ("VE"), the ALJ found that Plaintiff was capable of performing her past relevant work as a ticket seller (DOT No. 211.467-030) and retail clerk (DOT No. 290.477-014), as actually and generally performed.  (Tr. 18-19.)  The ALJ also found, in the alternative at the fifth step of the sequential evaluation, that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a counter attendant, an advertisement material distributor, and a cafeteria attendant, all of which are light exertional jobs with a Specific Vocational Preparation ("SVP") level of two.  (Tr. 19-20.)  Thus, the ALJ concluded that Plaintiff was not disabled from February 8, 2017 through September 3, 2019.  (Tr. 20.)

### 3. The Appeals Council Evidence and Decision

On December 16, 2019, Plaintiff provided her medical records from Tampa General Hospital, dated October 28, 2019 to November 8, 2019, and from Dr. Freeman with USF Department of Neurosurgery, dated July 8, 2019

11

to October 16, 2019, to the Appeals Council.³ (Tr. 33, 442.)

On October 8, 2019, Plaintiff underwent lumbar X-rays, showing mild scoliosis. (Tr. 449.) On October 8, 2019, Plaintiff underwent a lumbar MRI, which demonstrated:

1. There is multilevel degenerative disc disease with a small right paracentral disc protrusion at L4-L5 with mild central spinal stenosis and mass effect on the right L5 nerve root along the right lateral recess without interval change compared to 12/10/2018.
2. There is 3 mm anterolisthesis of L5 on S1 related to bilateral spondylolysis of L5 without interval change.

(Tr. 447-48.)

---

³ On July 8, 2019 (before the August 13, 2019 hearing and the ALJ's September 3, 2019 decision), Plaintiff underwent lumbar X-rays and also saw Dr. Freeman. (Tr. 445, 450.) Her lumbar X-rays demonstrated:
1. There is interval increase in grade 2 anterolisthesis of L5 on S1 since 5/7/2018 related to bilateral spondylolysis of L5.
2. Multilevel degenerative changes in the lower lumbar spine.
3. Mild dextroscoliosis.

(Tr. 450.)

On July 8, 2019, Dr. Freeman noted:
Once again[,] we had a very long discussion. Her low back pain is now going from 6 out of 10-10 out of 10 and her leg pain is resolved. She had a severe flareup about 3 weeks ago and it lasted 3 days where she had trouble straightening up. She can now only walk for 20 minutes as opposed to about 45 minutes when I saw her in December.
. . .
Having said that[,] she finally wants her back fixed[;] she understands that at age 53 she is unlikely to avoid surgery with time. Of note[,] the flexion-extension x-rays today that she has about 13 mm of listhesis and it was 11 mm about a year ago so there is some radiologic progression. This was mentioned as part of the assessment that she will require surgery for her axial back pain with now what is clearly progressing radiologically in terms of her listhesis. She also wants surgery because of the worsening pain.

(Tr. 445.) Dr. Freeman's July 8, 2019 note was available to the ALJ. (*See* Tr. 2005.)

12

On October 16, 2019, Plaintiff saw Dr. Freeman, who stated as follows:

The patient canceled surgery on September 11, 2018 with [one] week of notice. She is finally ready for surgery. Back pain goes up to 10 out of 10 in severity and is in the midline at the L5-S1 level without any facet pain on physical exam. There is also pain at the next level up, L4-5 which goes up to 5 out of 10 at worst in severity and this is livable. The pain at the L5-S1 level is what is not livable. . . . The L5-S1 regional pain is about 80% of her total pain. This is what limits her to standing for 45 minutes or sitting for 60 to 90 minutes or walking for 20 minutes. She does have some left leg pain with sitting which may be referred from the left sacroiliac joint but hopefully this will get better after surgery. Of note[,] her scoliosis x-ray shows about 7.2 cm of positive sagittal balance and she does have some stenosis at L5-S1 on the new MRI scan performed with and without contrast on October 8, 2019 due to the listhesis at L5-S1 with bilateral pars defects as well as epidural lipomatosis leading to moderate to marked canal stenosis at L5-S1. Therefore[,] any SI joint pain may be due to walking in a flexed manner and hopefully this will get better when she is walking more upright. She is in so much pain that she can no longer exercise.

From a social perspective, she underwent an evaluation for Social Security disability and this was denied. She therefore now wants surgery so that she can go back to work and make some money. . . .

In addition to the above mentioned findings at L5-S1 on the MRI scan with listhesis, bilateral pars defects and bilateral foraminal stenosis and canal stenosis with epidural lipomatosis as well, the patient has a right L4-5 mild to moderate disc bulge with foraminal stenosis. I suspect this is what is causing her right leg weakness which is chronic which includes 4+/5 strength in the right hamstring and 4+/5 strength in the right extensor hallucis longus with normal sensation to pinprick and 2+ reflexes in the knees and ankles. Although she is weak on the right side, she is complaining of left leg pain worse with walking.

Flexion-extension x-rays demonstrate progressive listhesis which has progressed over the last year and now goes from 11 to 14 mm

13

> at the L5-S1 level which is increased by 2 to 3 mm since a year ago. . . .
>
> Therefore[,] the planned operation is to do a decompressive L5-S1 laminectomy and right L4-5 decompressive hemi-laminectomy, and right L5-S1 TLIF [transforaminal lumbar interbody fusion] with interbody cage and interbody fusion (with local bone graft and [basic metabolic panel]), and a L5-S1 fusion and internal fixation and open reduction.

(Tr. 443-44; *see also* Tr. 100-01.)

The records from Tampa General Hospital reflect that on November 5, 2019, Plaintiff underwent L4-S1 decompressive laminectomies with medial facetectomies and foraminotomies; right L5-S1 TLIF (with interbody cage interbody fusion with local bone graft and basic metabolic panel); L5-S1 posterior lumbar fusion (with bone bank bone graft); and L5-S1 posterior internal fixation with open reduction.  (Tr. 63, 89-90.)  On November 6, 2019, Plaintiff complained of acute post-surgical lumbar pain, 6 out of 10 in severity, which was aggravated by movement.  (Tr. 105.)  The same day, Plaintiff underwent lumbar X-Rays, showing, *inter alia*, mild dextroconvexity, Grade 1 anterolisthesis of L5 on S1, and mild spondylosis. (Tr. 235.)  Plaintiff was discharged in a fair condition.  (Tr. 90.)  Upon discharge, she was advised to advance her activity as tolerated, walk as tolerated, not lift more than ten pounds, and wear her brace when sitting up or when out of bed.  (Tr. 80.)

On July 19, 2020, the Appeals Council denied Plaintiff's request for

review of the ALJ's September 3, 2019 decision. (Tr. 1.) With respect to the additional evidence submitted by Plaintiff, the Appeals Council stated, in relevant part:

> You submitted [m]edical [r]ecords from Dr. Thomas Freeman (USF Department of Neurosurgery), dated July 8, 2019 through October 16, 2019[] (9 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted [m]edical [r]ecords from Tampa General Hospital, dated October 28, 2019 through November 8, 2019[] (362 pages). The [ALJ] decided your case through September 3, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 3, 2019.
>
> If you want us to consider whether you were disabled after September 3, 2019, you need to apply again.

(Tr. 2.)

### C.     Analysis

A claimant is generally allowed to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (internal citation omitted). Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *See id.* Evidence is "material" when it

15

is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (quotations omitted). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

The Court finds that the new evidence submitted to the Appeals Council is chronologically relevant because at least some of the newly submitted medical records relate to the period on or before the date of the ALJ's September 3, 2019 decision. Although the Appeals Council found that the records from Tampa General Hospital did "not relate to the period at issue," it did not, and could not, make the same finding as to Dr. Freeman's records.[4] (Tr. 2.)

---

[4] While Dr. Freeman's July 8, 2019 note was available to the ALJ (*see* Tr. 2005), the ALJ did not seem to consider it in her decision. Although the ALJ referred to records from July of 2019 where Plaintiff "want[ed] surgery, reporting a reduction in her ability to walk, stand, and sit" (Tr. 18), she cited to Exhibit C13F, which does not include Dr. Freeman's July 8, 2019 note. Additionally, the ALJ's discussion and interpretation of the evidence that was available at the time of her decision, does not seem to indicate that the ALJ was aware of this particular note from July 8, 2019. The ALJ's discussion of the medical evidence suggests that Plaintiff "may require lumbar surgery" (Tr. 18), or "may eventually require surgery" (Tr. 17), but the new records from Dr. Freeman indicate that Plaintiff's back surgery was imminent due to her age, her worsening pain (now 10 out of 10), her greater limitations in functioning (such as ability to walk for only 20 minutes as opposed to 45 minutes previously), and the results of the July 8, 2019 lumbar X-rays, showing "radiologic progression" of her listhesis. (Tr. 445; *see also* Tr. 450 (showing, *inter alia*, "interval increase in grade 2 anterolisthesis of L5 on S1" and

16

The Court further finds that this new and chronologically relevant evidence is material because there is a reasonable possibility that it would have materially affected the administrative decision. In support of her RFC assessment, the ALJ stated that "neither diagnostic imaging nor objective findings on examination demonstrate that [Plaintiff's] impairments are nearly as severe as currently alleged." (Tr. 17.) When making that assessment, the ALJ was not aware of the results of Plaintiff's July 8, 2019 lumbar X-rays, or any of the subsequent imaging studies, including lumbar X-rays and MRI from October 8, 2019. In determining the RFC, the ALJ also relied on the outdated opinions of the State agency non-examining consultant and noted that Plaintiff had opted for more conservative treatment, declining surgery. (Tr. 18.) While that may have been true in 2017, Dr. Junejo did not seem to base his opinions on the lack of surgery. In any event, Plaintiff's testimony on August 13, 2019 clearly put the ALJ on notice that her lumbar surgery was upcoming despite the high risks it carried. (*See* Tr. 417-20, 422-25, 427, 433-34.)

Defendant argues that to the extent the new records show worsening of

---

multilevel degenerative changes in the lower lumbar spine).) These X-rays, along with the rest of the new evidence, were not available to the ALJ. In other words, the progression or worsening of Plaintiff's condition was reflected not only in the new records that post-dated the ALJ's decision, but also in the new records that predated the ALJ's decision and even the administrative hearing.

17

Plaintiff's condition after the ALJ's decision, they are not chronologically relevant. *See Ring v. Soc. Sec. Admin.*, 728 F. App'x 966, 969 (11th Cir. 2018) (per curiam) (affirming the ALJ's decision after finding that the doctor's evaluation seemed to relate to the worsening of a condition or the onset of a new condition after the date of the ALJ's decision) (citing HALLEX, I-3-3-6(B)(2); *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015)). However, as stated earlier, the worsening of Plaintiff's condition was reflected not only in the new records that post-dated the ALJ's decision, but also in the new records that predated the ALJ's decision and even the administrative hearing.

Also, the record that was before the ALJ, including Plaintiff's testimony at the hearing, indicated that Plaintiff was about to be scheduled for lumbar fusion surgery. On this record, the Court cannot say that the worsening of Plaintiff's condition happened only after the ALJ's decision. Instead, it was a progressive deterioration of a medical condition that the ALJ reviewed, which resulted in lumbar fusion surgery only two months after the ALJ's decision, of which the ALJ was put on notice during the hearing. While Defendant acknowledges Dr. Freeman described the same medical conditions that the ALJ already reviewed, Defendant claims that "Dr. Freeman's opinion is inconsistent with the other evidence of record." (Doc. 25 at 7.) It appears that Defendant is taking inconsistent positions.

In sum, based on the foregoing, the Court concludes that the new evidence submitted to the Appeals Council is chronologically relevant (at least in part) and material.[5] Although the Court cannot speculate what weight the ALJ may assign to the new evidence submitted to the Appeals Council, there is a reasonable possibility that this evidence, alone or when considered with the rest of the file, could change the outcome in this case. Therefore, this case will be reversed and remanded for further proceedings.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the newly submitted evidence, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any § 406(b) or § 1383(d)(2) fee application must be filed within the parameters set

---

[5] Given that the new evidence predates Plaintiff's date last insured, it is appropriate for the Commissioner to consider all of this evidence in rendering a new decision on Plaintiff's claims.

19

forth by the Standing Order on Management of Social Security Cases entered in *In re: Administrative Orders of the Chief Judge*, Case No.: 3:21-mc-1-TJC (M.D. Fla. Dec. 7, 2021).

**DONE AND ORDERED** at Jacksonville, Florida, on May 6, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record